# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YVONNE E. KRICK, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| vs. | : | NO. 16-1734 |
| | : | |
| GIANT FOOD STORES, LLC, | : | |
|     Defendant | : | |

# M E M O R A N D U M

**STENGEL, C.J.**                                                                                            **March 28, 2018**

Plaintiff Yvonne E. Krick brought this diversity action against Defendant Giant Food Stores alleging one count of negligence,[1] stemming from injuries she sustained as a business invitee at the defendant's location in Reading, Pennsylvania. The defendant filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, to which the plaintiff responded. Because I find that there is a genuine dispute of material facts, I will deny the motion in its entirety.

## I.  BACKGROUND

On May 30, 2014, Ms. Krick was working as an independent contractor at the defendant's grocery store in Reading. At approximately 8:00 that morning, Ms. Krick tripped on a carpet or floor mat located in the Dairy Department. Immediately afterwards, Ms. Krick reported the incident to Mark Kimmel, the store's senior manager on duty at the time.

---

[1] In her second amended complaint, Ms. Krick included C&W Facility Services, Inc., as a defendant in this action, also alleging one count of negligence. See Document #14. On September 2, 2016, the parties stipulated to voluntarily dismiss all claims against C&W without prejudice. See Document #18.

During the course of each day, Giant employees are tasked with performing hourly "clean sweep" inspections of the store's premises using a scanning gun to scan barcodes at various areas throughout the store. These inspections are designed to, *inter alia*, locate and address conditions which might pose a hazard to customers, including the presence of objects on the floor or other conditions which could create a risk of tripping. For example, a folded-up floor mat would have constituted a hazard to be noted during the clean sweep. Giant's Clean Sweep Guidelines require employees performing this task to identify and resolve any identified hazards.

The defendant's records show that a clean sweep of the area where Ms. Krick tripped was performed by Giant employee Elma DeJesus at 7:22 a.m. on May 30, 2014. No hazards, including any issues with floor mats, were noted on Ms. DeJesus's Clean Sweep Report for that morning.

Ms. Krick, who visited that Giant store twice a month in her professional capacity, had never observed the mats at the store in any condition other than flat. As she was walking from the front of the store to the back, she was able to see the Dairy Department where the incident occurred. The lighting was sufficient such that Ms. Krick had no trouble seeing where she was walking, and that there was nothing obstructing her view as she proceeded towards the back of the store.

Ms. Krick testified that, on May 30, 2014, her foot got caught in a fold in one of the mats in the Dairy Department of the store, causing her to lose her balance and lunge forward. She further testified that had she been looking where she was walking, she would have seen the mat on the floor before she tripped over it.

Immediately after Ms. Krick reported the incident to Mr. Kimmel, he went to the Dairy Department with her to survey the area. He observed that the mat on which Ms. Krick tripped was lying flat. Ms. Krick testified that she has no idea how the mat came to be folded, who flipped it over, or how long it had been in that condition prior to her fall.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party" based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating to the district court that "there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

3

Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving party's "version of events against the opponent, even if the quantity of the [moving party's] evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

In this diversity action, Ms. Krick alleges one claim of negligence against Defendant Giant Food Stores. A federal court must apply the substantive laws of its forum state in diversity actions. Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007). Under Pennsylvania law, the mere occurrence of an accident does not establish negligent conduct. Martin v. Evans, 551 Pa. 496, 502, 711 A.2d 458 (Pa.1998). Rather, in any case sounding in negligence, a plaintiff must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury;

and (4) actual loss or damage resulting to the plaintiff.  Farabaugh v. Pa. Turnpike Comm'n, 911 A.2d 1264, 1272-73 (Pa. 2006).

### A. Duty Owed a Business Invitee

All negligence claims are premised on the alleged violation of a duty.  Wenrick v. Schloemann-Siemag Aktiengesellschaft, 564 A.2d 1244, 1248 (Pa. 1989).  The duty a landowner owes to a person on its land depends upon whether the person is a business invitee, licensee, or trespasser.  Trude v. Martin, 660 A.2d 626, 630 (Pa.Super. 1995).  A business invitee is a "person who is invited to enter or remain on land for a purpose directly or indirectly connected with the business dealings with the possessor of the land."  Charlie v. Erie Ins. Exch., 100 A.3d 244, 253 (Pa.Super. 2014) (quoting Restatement (Second) of Torts § 332 (2016)).  Here, it is undisputed that Ms. Krick was a business invitee of Defendant Giant Food Stores on the day in question.

"The duty owed to a business invitee is the highest duty owed to any entrant upon land."  Truax v. Roulhac, 126 A.3d 991, 997 (Pa.Super. 2015).  Under this duty of care, a landowner cannot escape liability simply by protecting business invitees from "known dangers."  Id.  It must also protect business invitees from dangers that might be discoverable with reasonable care.  Id.  Specifically, a landowner is liable for a business invitee's injuries if the landowner:

> (a) Knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees;

>     (b)   Should expect that they will not discover or realize
>           the danger, or will fail to protect themselves against
>           it; and
>
>     (c)   Fails to exercise reasonable care to protect them
>           against the danger.

Rodriguez v. Kravco Simon Co., 111 A.3d 1191, 1193 (Pa.Super. 2015) (quoting Restatement (Second) of Torts § 343 (2016)).

### B. Did the Defendant Have Notice of the Harmful Condition?

In establishing her *prima facie* case, Ms. Krick, as a business invitee, must ultimately prove that Giant Food Stores "had a hand in creating the harmful condition, or that [it] had actual or constructive notice of such condition." Moultrey v. Great A&P Tea Co., 422 A.2d 593, 535 (Pa.Super. 1980). A jury may infer a landowner had actual notice of a condition where "the condition is one which the owner knows has frequently recurred." Porro v. Century III Assocs., 846 A.2d 1282, 1286 (Pa.Super. 2004).

Here, Ms. Krick has not demonstrated that Giant had actual notice of the alleged harmful condition of the mats in the Dairy Department on the morning of May 30, 2014. If a plaintiff is unable to demonstrate actual notice, she may still meet her burden by establishing constructive notice. What amounts to constructive notice of a condition depends upon several factors. Falcone v. Speedway, LLC, 2017 WL 220326, at *2 (E.D. Pa. Jan. 19, 2017). These factors include: (1) the number of persons using the premises; (2) the frequency of such use; (3) the nature of the defect; (4) location of the premises; (5) the condition's probable cause; and (6) the opportunity that the defendant, as a reasonably prudent person, has to remedy the condition. Id.

6

There are genuine issues of material fact as to whether Giant had constructive notice of the turned/flipped up mat that caused Ms. Krick to trip. Considering the first, second, and fourth factors, it is undisputed that the alleged condition occurred in the public area of a retail food store where invitees, including Ms. Krick, would regularly appear to shop or conduct other business. The store was open to the public at the time of the accident, and there were other invitees present, including customers. Ms. Krick was one of four people in the area of the incident. At least two of those people witnessed the accident.

As to the third and fifth factors, there is a genuine dispute as to a material fact rendering summary judgment inappropriate. The parties dispute whether the mats in the Dairy Department were in a state which would cause Ms. Krick to trip and injure herself. Ms. Krick testified that the mat in the dairy aisle was flipped/turned up. The aisle ran vertically through the store. The flipped/turned up mat was one of three rectangle-shaped mats towards the back of the aisle, but it was the only one that did not lie flat. The mat was folded the "long way" with the long sides touching one another and the short side folded on itself. Ms. Krick described that her left foot got caught in the fold. She then lunged forward and attempted to catch herself before falling. Ms. Krick had a "pulling" sensation behind her leg and pain in her arm afterwards.

Sherri Young testified that she witnessed Ms. Krick "get[] caught on the carpet that had been folded over." She then noticed that of the three mats in that area, all three were folded over. Two weeks after Ms. Krick's fall, Ms. Young noticed the mats in the same department of the store in a similarly folded condition. A co-worker took a picture

7

of the mats with her cellphone. Ms. Young and her co-worker informed the manager of the Dairy Department of the hazard, and he unfolded the mats. The manager assumed that whoever had cleaned the floors the previous night folded the mats and just did not unfold them afterwards. Through Mr. Kimmel's testimony, Giant conceded that if a mat were turned/flipped up as alleged, it would constitute a hazard that should be addressed immediately - you "pick it up, don't pass it up."

On the other hand, Giant Employee Elma DeJesus testified that she performed a "clean sweep" of the area between the bakery and dairy aisle, including the accident scene, in seventeen seconds. Ms. DeJesus testified that a "clean sweep is a routine that we do every morning or every hour of the day at the store. We will walk the store. Well, we have this gun that we have, and when we're approaching the bar code, we scan it, but before we scan it, we have to make sure that there's no debris, there's nothing around the floor that could be a hazard to anybody. So we will scan it, and we just go to the next aisle, to the next bar code that we had. That's mostly all of it." If the mats were not lying flat or there was debris or a spill, an employee was expected to "clean it up and mark it on the gun if there was a hazard." Ms. DeJesus testified that because no hazards were entered into the "clean sweep" log during the date and time in question, the mats in the Dairy Department were not folded but lying flat.

Ms. DeJesus further testified that Giant employed a company that assisted overnight with cleaning the floors. These cleaners would typically be gone before Ms. DeJesus's shift would begin. It was Ms. DeJesus's understanding that these cleaners "would buff the floors. They would clean – they would clean the floors, buff the floors,

8

and remove the mats, you know, of the area to clean the area, and then they would put the mats back on the floor." Ms. DeJesus never observed the mats rolled up on themselves when she arrived for work. "They would always lie flat."

Mr. Kimmel testified that it is his practice to do a "walk through" of the entire store at the beginning of his 7:00 a.m. shift. This practice ensures that the store is clean and free of hazards. If he were to see anything amiss, he would write it down in his "tour book," and have the situation remedied by one of his associates. If he saw a mat turned over on itself, however, Mr. Kimmel would consider that such a hazard, that he would probably correct it himself immediately.

Mr. Kimmel also testified that every night a third party contractor comes to the store to clean the floors. He has no firsthand knowledge of whether the mats are typically removed during the cleaning process, but he is certain that when his shift begins, there are mats throughout the store. Mr. Kimmel also testified that shortly after 8:00 a.m., on the morning of May 30, 2014, Ms. Krick came to him to say that a mat was turned in the Dairy Department, and that she tripped and almost fell, but caught herself prior to falling. Mr. Kimmel contacted Medcor, the defendant's Risk Management team, to report the incident. Ms. Krick was present during the phone call. Ms. Krick told Mr. Kimmel that she was okay. Mr. Kimmel and Ms. Krick immediately went to the Dairy Department, but by then, the mat was lying flat.

Mr. Kimmel further testified that when he learned that Ms. DeJesus had done the clean sweep of the store before 8:00 a.m., he asked her if she had any issues or problems during the clean sweep. She responded that there were no issues or problems uncovered.

9

When Mr. Kimmel informed her about Ms. Krick's claim of folded-up mats, Ms. DeJesus seemed shocked. Although he is certain that Ms. DeJesus informed him that there were no issues during the clean sweep, he is not certain if Ms. DeJesus specifically told him that she checked the mats and that they were lying flat. Mr. Kimmel testified that he is unaware of any mat being flipped up on itself either before or after May 30, 2014.

Given this conflict in testimony, it is impossible for me to find that Giant had constructive notice of a hazardous condition which caused Ms. Krick to trip and injure herself on the morning of May 30, 2014. Ms. Krick and Ms. Young were certain that the mat in the Dairy Department was flipped over and caused Ms. Krick to trip and injure herself. Ms. DeJesus and Mr. Kimmel were just as certain that the dangerous condition never existed. Such contradictions in testimony are for a factfinder to resolve after considering the witnesses' credibility. In order to find in favor of Giant, I would have to accept Giant's facts, draw all reasonable inferences in its favor, and ignore the disputed facts in the record. Doing so would be violative of the well-settled standard for ruling on motions for summary judgment. Accordingly, because there are genuine issues of material fact related to whether Giant had constructive notice of the turned/flipped up mat, I will deny the motion for summary judgment.[2]

An appropriate Order follows.

---

[2] Because a genuine dispute of material fact prohibits a finding that the defendant had constructive notice of a hazardous condition, a discussion of whether that hazardous condition was open and obvious is unwarranted here. That finding is also better left to the jury at trial.